UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC,<br><br>  Plaintiffs,<br><br>v.<br><br>HEALTH ALLIANCE PLAN OF MICHIGAN,<br><br>  Defendant. | Civil Action No. _____ |

**COMPLAINT AND PETITION TO CONFIRM ARBITRATION AWARD**

Plaintiffs, SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively, "SpecialtyCare"), bring this action against Health Alliance Plan of Michigan ("HAP Michigan") and allege as follows:

### I. INTRODUCTION

1. This action is necessary because HAP Michigan has failed and/or refused to pay to SpecialtyCare the money that they were ordered to pay in arbitral awards rendered pursuant to the federal No Surprises Act ("NSA").

2. SpecialtyCare therefore brings this action to recover $16,315 in out-of-network ("OON") reimbursement pursuant to awards issued to SpecialtyCare against HAP Michigan under the NSA.

3. SpecialtyCare is recognized as a leading national healthcare provider of perfusion and intraoperative neuromonitoring throughout the United States. At all material times, HAP Michigan was obligated to cover and reimburse SpecialtyCare for certain OON items and services

rendered to HAP Michigan members and insureds under the NSA, plus pre- and post-judgment interest and costs of collection.

4. Under the NSA, effective January 1, 2022, SpecialtyCare can dispute the amounts HAP Michigan paid for OON services furnished to patients enrolled in health benefit plans sold, insured, or administered by HAP Michigan, through an independent dispute resolution ("IDR") process administered by the Centers for Medicare & Medicaid Services ("CMS"), where a neutral known as an "IDR entity" determines the amount that HAP Michigan is required to pay SpecialtyCare on a particular claim for OON services.

5. If the IDR entity determines that HAP Michigan underpaid SpecialtyCare, based on several factors the IDR entity considers, and awards SpecialtyCare additional amounts to ensure SpecialtyCare is fairly compensated, HAP Michigan is required to make the additional payments to SpecialtyCare within 30 calendar days of that decision. 42 U.S.C. § 300gg-111(b)(1)(c).[1] The IDR entity's decision is "binding upon the parties involved" and not subject to judicial review absent circumstances described under the Federal Arbitration Act at 9 U.S.C. § 10(a)(1)-(4). *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)-(F); 45 C.F.R. § 149.510(c)(4)(vii)(A).

6. Having underpaid each of the claims at issue in this action, HAP Michigan forced SpecialtyCare to initiate IDR proceedings under the NSA to be fairly compensated. After the IDR entity awarded SpecialtyCare additional amounts in each of those proceedings, HAP Michigan failed to pay SpecialtyCare the additional amounts owed. A tabulation identifying each IDR award, including the date the award was issued, the amount of the award, any payments to date of the

---

[1] The relevant statutory provisions of the NSA, and its implementing regulations, are codified in three places: the Public Health Service Act ("PHS Act"), enforced by the Department of Health and Human Services ("HHS"); the Internal Revenue Code ("IRC"), enforced by the Department of the Treasury ("Treasury Department"); and the Employee Retirement Income Security Act ("ERISA"), enforced by the Department of Labor ("DOL"). For ease of reference, this Complaint cites to the PHS Act provisions and implementing regulations.

award, and the remaining amount HAP Michigan owes under of each award, together with the aggregate of these unpaid balances, is attached hereto as **Exhibit A**.[2]

7. SpecialtyCare has made numerous attempts to obtain payment from HAP Michigan, but its attempts have been unsuccessful. No satisfactory defense or explanation has been forthcoming from HAP Michigan. As a result, this action is necessary so SpecialtyCare can secure enforcement of the binding IDR awards by final judgment against HAP Michigan in a court of law as allowed by the NSA.

## II. PARTIES

8. SpecialtyCare, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business in Brentwood, Tennessee. SpecialtyCare has two affiliated entities: Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC. Remote Neuromonitoring Physicians, PC is a professional corporation organized under the laws of the State of Pennsylvania whose principal place of business is located in Brentwood, Tennessee. Sentient Physicians, PC is a professional corporation organized under the laws of the State of Illinois whose principal place of business is located in Brentwood, Tennessee.

9. HAP Michigan is a non-profit corporation organized under the laws of the State of Michigan whose principal place of business is in Detroit, Michigan.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. Additionally, this Court has supplemental jurisdiction over the state-based claims because they "are so related to claims in the

---

[2] Given the volume of IDR awards at issue in this matter, Plaintiffs have not attached copies of the IDR awards. However, Plaintiffs' counsel will provide Defendant's counsel with the documentation for each individual IDR award upon counsel's request and will file the IDR awards with the Court as necessary.

3

action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

11. This Court has personal jurisdiction over HAP Michigan because, among other reasons, HAP Michigan has its principal place of business in Michigan, operates, conducts, engages in and carries on a business in Michigan and committed the acts complained of herein in Michigan. Further, HAP Michigan is engaged in substantial and not isolated activity in Michigan, both interstate and intrastate.

12. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) because, at all times material hereto, HAP Michigan is a corporation conducting business in this Judicial District.

## IV. FACTS

13. This dispute arises from HAP Michigan's failure to reimburse SpecialtyCare for healthcare services it provided to HAP Michigan's members, or patients who receive their insurance from self-funded ERISA plans for whom HAP Michigan provides administrative services.

14. At all material times, HAP Michigan was obligated to cover and reimburse SpecialtyCare for certain OON items and services rendered to HAP Michigan's members and insureds—each of whom validly and in writing assigned his or her benefits claims to SpecialtyCare—under the federal NSA.

15. The NSA, which became effective January 1, 2022, requires health plans and issuers, such as HAP Michigan, to provide coverage and reimburse providers directly for OON emergency healthcare services and non-emergency services furnished to insured patients by OON providers at participating hospitals and facilities.

16. Under the NSA, health plans and issuers have 30 calendar days from the date the bill is transmitted by the provider to pay or deny the claim. *See* 42 U.S.C. § 300gg-111(b)(1)(c). Plans and issuers are allowed to initially pay the OON provider whatever amount they choose (or nothing at all). If the payment is too low, the provider may initiate an "open negotiation period" to negotiate a higher amount. *Id.* at § 300gg-111(c)(1)(A). If negotiations fail, the provider may initiate an IDR process where a third-party arbitrator, known as an IDR entity, determines the pricing on the claim(s). *Id.* at § 300gg-111(c)(1)(B).

17. The IDR process requires both parties to submit to the IDR entity position statements and proposed offers of payment for the items and services at issue.[3] *Id.* § 300gg-111(c)(5)(B)(i)(I). The IDR entity then evaluates both proposed offers, based on a number of statutory factors, and selects one offer as the appropriate payment for the items and services at issue, and issues its written payment determination. *Id.* at § 300gg-111(c)(5)(C).

18. Any additional payment required by the IDR entity's determination must be made directly to the provider **no later than thirty (30) calendar days** after the IDR entity issues its decision. *Id.* at § 300gg-111(c)(6); *see also* 45 C.F.R. § 149.510(c)(4)(ix).

19. The IDR entity's decision is "binding upon the parties involved" and not subject to judicial review absent circumstances described under the Federal Arbitration Act at 9 U.S.C. § 10(a)(1)-(4). *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)-(F); 45 C.F.R. § 149.510(c)(4)(vii)(A).

20. Since the implementation of the NSA, IDR entities have issued hundreds of decisions requiring HAP Michigan to pay SpecialtyCare additional amounts pursuant to the NSA.

---

[3] If one of the parties fails to submit an offer within the required timeframes, the IDR entity must select the other party's offer as the final award. *See* Ctrs. For Medicare & Medicaid Servs., *Federal Independent Dispute Resolution (IDR) Process Guidance for Disputing Parties* § 6.2.2, (Oct. 2022), available at https://web.archive.org/web/20230106173733/https://www.cms.gov/files/document/federal-independent-dispute-resolution-guidance-disputing-parties.pdf

21. The IDR determinations at issue were rendered in accordance with the NSA, and are, therefore, binding upon HAP Michigan. *Id.* § 300gg-111(c)(5).

22. HAP Michigan, however, consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $16,315 in unpaid past due amounts owed to SpecialtyCare from HAP Michigan (the "Debt").

23. Additionally, HAP Michigan consistently failed to make timely payment within the NSA's required 30-calendar-day payment window, which begins when the IDR entity issues a decision finding that SpecialtyCare is owed additional payment. Indeed, many payments are overdue well-beyond the 30-calendar-day payment window.

24. SpecialtyCare has made numerous demands to HAP Michigan for its payment on the Debt.

25. SpecialtyCare escalated the issue of HAP Michigan's failure to timely remit payment for the Debt to HAP Michigan and demanded payment for the same. Although not required by the NSA, SpecialtyCare provided a spreadsheet inventory of IDR entity determinations to HAP Michigan to aid in the resolution of the Debt. SpecialtyCare also, from time to time, supplemented its inventory with copies of the IDR entities' determinations for each OON claim dispute at issue. Such inventory listed the following identifying information: IDR dispute number, CPT, Service Date, PCN, Payor Claim Number, Award Total, Decision Date, Expected Payment Date, Total Payments (to date), Still Owed, Patient Amount Paid.

26. SpecialtyCare diligently followed-up with HAP Michigan through multiple avenues. HAP Michigan, however, has frequently ignored SpecialtyCare's reminders for weeks at a time and has continued to not pay the Debt.

27. Despite SpecialtyCare's efforts, HAP Michigan has not paid the Debt, and the past due amounts have continued to increase to the current amount of the Debt.

28. SpecialtyCare engaged and continues to engage in a series of transactions in an open account with HAP Michigan.

29. SpecialtyCare provided and continues to provide OON items and services to HAP Michigan's members and insureds, and it seeks reimbursement pursuant to the NSA, when necessary. Accordingly, SpecialtyCare also expects to enter further transactions with HAP Michigan that may yield future IDR entity determinations that increase the Debt.

30. HAP Michigan knows that it is statutorily required to pay IDR awards within thirty days. Upon information and belief, HAP Michigan has not, however, prioritized the compliance systems and personnel needed to meet its obligations under federal law, to the detriment of SpecialtyCare and to the advantage and unjust enrichment of HAP Michigan, its stakeholders, and the health plans it serves.

31. HAP Michigan knows that the longer it delays or denies payment, the more it can earn from the interest and/or investment income generated for its fully insured business. By delaying payment or not paying IDR awards, HAP Michigan is able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them or using the results to market their services to other health plans.

32. Despite SpecialtyCare's numerous demands, HAP Michigan has failed to satisfy the Debt.

## V.   CLAIMS FOR RELIEF

### COUNT 1
### PETITION TO CONFIRM ARBITRATION AWARDS
### (9 U.S.C. § 9)

33. SpecialtyCare incorporates the foregoing paragraphs by reference.

34. Pursuant to 9 U.S.C. § 9, a party can petition a court to confirm an arbitration award.

35. Federal courts have authority to confirm IDR awards issued pursuant to the NSA under 9 U.S.C. § 9. *See, e.g.*, *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. CV226614KMJBC, 2023 WL 5815821 (D.N.J. Sept. 8, 2023) (granting Horizon Blue Cross & Blue Shield's cross-motion to confirm an IDR entity award under 9 U.S.C. § 9 because the language of the NSA indicates the IDR award is "final and binding" and, by invoking Section 10(a) of the Federal Arbitration Act, the NSA "gives the court the authority to confirm the award").

36. SpecialtyCare has met all the pre-conditions for enforcement of the IDR awards at issue.

37. Accordingly, SpecialtyCare is entitled to an Order confirming each arbitration award set forth in **Exhibit A.**

## COUNT 2
## ACTION FOR NONPAYMENT OF IDR DETERMINATION
## (42 U.S.C. § 300gg-111(c)(6))

38. SpecialtyCare incorporates the foregoing paragraphs by reference.

39. The determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(I), 300gg-111(c)(6).

40. SpecialtyCare is entitled to have the IDR determination converted into a federal judgment and enforced with the assistance of this Court in post-judgment collection efforts.

41. SpecialtyCare is further entitled to pre-judgment interest from the 31st day after each determination date until the date judgment is entered and post-judgment interest from the date after judgment is entered until payment is satisfied by HAP Michigan.

42. Accordingly, SpecialtyCare is entitled to judgment in the amount of the Debt plus pre- and post- judgement interest and the costs of collection.

## COUNT 3
## IMPLIED RIGHT OF ACTION UNDER THE NSA

43. SpecialtyCare incorporates the foregoing paragraphs by reference.

44. The NSA includes an implied right of action against Defendants for the amount owed to SpecialtyCare.

45. Under the NSA, the determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made." See 42 U.S.C. §§ 300gg- 111(c)(5)(E)(i)(I), 300gg-111(c)(6).

46. The NSA thus requires HAP Michigan to pay to SpecialtyCare the IDR Award Balance Owed for the services at issue in this case.

47. Accordingly, SpecialtyCare is entitled to judgment in the amount of the Debt plus pre- and post- judgement interest and the costs of collection.

## COUNT 4
## IMPROPER DENIAL OF BENEFITS
## (ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

48. SpecialtyCare incorporates the foregoing paragraphs by reference.

49. SpecialtyCare has been assigned the right to payment and benefits from HAP Michigan's members. This means SpecialtyCare steps into the shoes of, and is now considered, an ERISA beneficiary pursuant to 29 U.S.C. § 1002(8) for any self-funded plans HAP Michigan is administering. As beneficiaries, SpecialtyCare is entitled to plan benefits, is the real party in interest as to these claims, and has standing to bring claims under ERISA.

50. HAP Michigan improperly denied benefits by failing to pay the IDR awards within 30 days of each decision, as required by federal law. HAP Michigan's actions constitute an abuse

of discretion by (a) not properly interpreting plan terms that are unambiguous, (b) exercising discretion over non-discretionary plan terms, and (c) denying SpecialtyCare payment and benefits under the plan terms.

51. SpecialtyCare is entitled to recover payment of plan benefits from HAP Michigan pursuant to the IDR determinations

52. HAP Michigan is responsible for NSA compliance for the plans it administers, including responding to IDR complaints and paying IDR awards, in connection with administering self-funded benefits plans. HAP Michigan breached its obligations to both the self-funded plans it administers and the plan beneficiaries by not paying IDR awards for services rendered to plan beneficiaries

53. HAP Michigan's denial of payment and benefits pursuant to the binding IDR determinations was not substantially justified, arbitrary and capricious, unsupported by substantial evidence, constituted an abuse of discretion, and wrongful under all circumstances.

54. SpecialtyCare, as assignee, hereby asserts a claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover payment of the IDR awards from the self-funded plans administered by HAP Michigan at issue.

55. Pursuant to 29 U.S.C. § 1132(g), SpecialtyCare further seeks an award of reasonable attorney's fees and costs incurred in bringing this action.

56. Accordingly, SpecialtyCare is entitled to judgment in the amount of the Debt plus pre- and post- judgement interest and the costs of collection.

## COUNT 5
## ACCOUNT STATED

57. SpecialtyCare incorporates the foregoing paragraphs by reference.

58. Before SpecialtyCare instituted this action, the parties had business transactions between them in which they agreed on the entire amount due as the Debt.

59. SpecialtyCare has made frequent demands to HAP Michigan for the above-described obligations and provided HAP Michigan with a statement of its balance owed on the Debt.

60. HAP Michigan does not object to and has not contested the validity or quantum of the IDR entity determinations underlying the Debt.

61. HAP Michigan has failed to pay SpecialtyCare $16,315 that is due on the account.

62. Accordingly, SpecialtyCare is entitled judgment in the amount of the Debt plus pre- and post-judgment interest and the costs of collection.

## COUNT 6
## OPEN ACCOUNT

63. SpecialtyCare incorporates the foregoing paragraphs by reference.

64. Before SpecialtyCare instituted this action, the parties had business transactions between them in which they agreed on the entire amount due as the Debt.

65. SpecialtyCare has made frequent demands to HAP Michigan for the above-described obligations and provided HAP Michigan with a statement of its balance owed on the Debt, but HAP Michigan has left its account open, due, and owing.

66. HAP Michigan owes SpecialtyCare $16,315 that is due with applicable interest, in accordance with the attached statement of HAP Michigan's balance owed on the Debt.

67. Accordingly, SpecialtyCare is entitled to judgment in the amount of the Debt plus pre- and post- judgement interest and the costs of collection.

## COUNT 7
## BAD FAITH

68. SpecialtyCare incorporates the foregoing paragraphs by reference.

69. SpecialtyCare asserts a claim for bad faith in violation of M.C.L. § 500.2006(4).

70. SpecialtyCare made demand for payment on the Debt.

71. HAP Michigan refused to pay the Debt more than sixty days after the Debt was due and owing.

72. HAP Michigan knew it did not have a reasonable cause to refuse payment of the Debt.

73. HAP Michigan's refusal to pay was committed in bad faith.

74. HAP Michigan's refusal to pay has inflicted additional expense, loss, and injury, including attorneys' fees and other costs incurred on SpecialtyCare to pursue recovery of amounts owed.

75. As a direct result of HAP Michigan's conduct, SpecialtyCare has been harmed.

76. SpecialtyCare is entitled to recover the balance due on the Debt as well as interest and its reasonable costs and attorneys' fees. Pursuant to M.C.L. § 5002006(4), SpecialtyCare is entitled to interest at the rate of 12% per annum.

## COUNT 8
## UNJUST ENRICHMENT

77. SpecialtyCare incorporates the foregoing paragraphs by reference.

78. For unpaid IDR awards, HAP Michigan has been unjustly enriched by failing and refusing to pay the amounts due and owing to SpecialtyCare for services they provided to HAP Michigan members.

79. HAP Michigan received a benefit by receiving premiums and other consideration from the members, which in turn allowed the members to receive valuable medical care from SpecialtyCare with the expectation, by both the members and SpecialtyCare, that HAP Michigan would pay the benefits it agreed to pay in exchange for the premiums and consideration provided.

12

80. HAP Michigan voluntarily accepted and retained the benefit conferred.

81. SpecialtyCare has been adversely impacted by providing valuable treatment to the members with the expectation of payment, only to be systematically and arbitrarily denied such payment by HAP Michigan. In providing such care, SpecialtyCare incurred costs associated with the use and consumption of materials and supplies, expenditure of employee time and effort, and the cost of capital—all without receiving any payment for its efforts, services, and investments.

82. There is no justification for HAP Michigan's refusal to pay for the medical treatment provided to members, and it would be inequitable for HAP Michigan to retain the benefits it has received under these circumstances without paying the value thereof to SpecialtyCare in the sum of $16,315.

83. HAP Michigan has been, and would continue to be, unjustly enriched if allowed to retain the benefit without paying the value thereof, and SpecialtyCare has suffered damages as a result.

## VI. PRAYER FOR RELIEF

WHEREFORE, SpecialtyCare prays for the following relief:

A. Judgment be entered against HAP Michigan on each claim asserted herein;

B. An Order confirming each IDR award included in Exhibit A pursuant to 9 U.S.C. § 9;

C. An Order enforcing the IDR awards and a judgment for the total amount outstanding plus pre- and post-judgment interest under 28 U.S.C. § 1961;

D. An Order awarding SpecialtyCare its costs and reasonable attorney's fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g);

E.  Judgment be entered against HAP Michigan in an amount to be determined at a hearing of this cause, plus any applicable interest and reasonable attorneys' fees and costs; and

F.  For such other, further, and general relief to which SpecialtyCare may show itself entitled.

Dated: January 8, 2025.

>Respectfully submitted,
>
>/s/ *Joshua McCaig*
>Joshua McCaig (#P66076)
>POLSINELLI PC
>900 W. 48th Place, Suite 900
>Kansas City, MO 64112
>816-395-0651
>jmccaig@polsinelli.com
>
>Joshua D. Arters (TN #31340) (*pro hac vice forthcoming*)
>Kevin T. Elkins (TN #33280) (*pro hac vice forthcoming*)
>POLSINELLI PC
>501 Commerce Street, Suite 1300
>Nashville, Tennessee 37203
>615-252-3923
>jarters@polsinelli.com
>kelkins@polsinelli.com
>
>*Counsel for Plaintiffs*